IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| STEVEN FARROW | : | No. 06-2922 |

**ORDER-MEMORANDUM**

AND NOW, this 1st day of March, 2007, upon consideration of Petitioner Steven Farrow's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and the Government's response thereto, **IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **CONDITIONALLY GRANTED**. Petitioner shall be released from custody not later than 10 days after the date of this Order-Memorandum, unless Respondent can demonstrate, within that period of time, that a properly calculated sentence (in conformity with <u>Fowler v. United States Parole Comm'n</u>, 94 F.3d 835 (3d Cir. 1996) and this Order-Memorandum) warrants further confinement beyond that date.

The instant Petition challenges the authority of the United States Parole Commission (the "Parole Commission"), to sentence a defendant to serve additional terms of special parole after his initial term of special parole is revoked. The Parole Commission has, on three occasions, sentenced Petitioner to new terms of special parole after revoking his special parole. We find that the Parole Commission did not have the authority to sentence Farrow to special parole after his initial term of special parole was revoked and that he should have been placed on traditional parole after his release from each sentence of imprisonment imposed upon him for his parole violations.

A.     Background

On January 23, 1987, Petitioner was sentenced by the United States District Court for the Southern District of Ohio to a ten year term of imprisonment for use of a telephone to facilitate distribution of a controlled substance, in violation of 21 U.S.C. § 843(b) and for distribution of methaqualon, in violation of 21 U.S.C. § 841(a)(1). (Gov't Ex. 16.) He was also sentenced to a six year term of special parole, to commence when he was released from custody, pursuant to 21 U.S.C. § 841(c) and 18 U.S.C. § 4205.[1] (Gov't Ex. 16.) Petitioner was released from custody and commenced serving his term of special parole on February 10, 1996. (Gov't Ex. 2.)

On April 4, 2001, Petitioner was charged with three violations of his special parole, including theft and breaking and entering, for which he was arrested by the Columbus, Ohio Police Department. (Gov't Ex. 3.) On July 22, 2002, the United States Parole Commission found that Petitioner had violated the terms of his special parole and revoked his special parole. (Gov't Ex. 4.) The Parole Commission sentenced him to 18 months imprisonment (giving him credit for fifteen months of time served in state and federal custody prior to the revocation decision) and 898 days of special parole. (Gov't Exs. 4, 5.) Petitioner was not given any credit for the street time he spent on special parole prior to the revocation of his special parole. (Gov't Ex. 4.) Petitioner was re-paroled to serve 898 days on special parole on September 27, 2002. (Gov't Ex. 5.)

Petitioner was charged with violating the terms of his special parole for a second time on May 23, 2003. (Gov't Ex. 6.) He was taken into federal confinement on those charges on June 26, 2003. (Gov't Ex. 8.) On September 17, 2003, after he waived his right to a revocation hearing, the Parole Commission found that Petitioner had again violated the terms of his special parole and his

---

[1] 21 U.S.C. § 841(c) and 18 U.S.C. § 4205 were both repealed after Petitioner was sentenced.

special parole was revoked for the second time. (Gov't Exs. 7, 8.) The Parole Commission sentenced him to twelve months imprisonment, to be re-paroled to special parole on June 26, 2004. (Gov't Ex. 8.) Petitioner was given credit for time he served in federal custody prior to the revocation, but not for the street time he spent on special parole between September 27, 2002 and June 26, 2003. (Gov't Ex. 8.) Petitioner was released from custody on June 26, 2004 and re-paroled to special parole until November 25, 2008. (Gov't Ex. 9.)

On January 31, 2006, Petitioner was charged with violating his special parole for the third time. (Gov't Ex. 10.) Petitioner was taken into federal custody on these charges on February 23, 2006 and held until a revocation hearing was held on August 7, 2006. (Gov't Ex. 14.) Following a revocation hearing, the Parole Commission found that Petitioner violated the terms of his special parole. (Gov't Ex. 14.) The Parole Commission revoked Petitioner's special parole and sentenced him to 14 months imprisonment, to be re-paroled to special parole after his release. (Gov't Ex. 14.) Petitioner was not given credit for any of the street time which he spent on special parole between June 26, 2004 and February 23, 2006. (Gov't Ex. 14.) He currently anticipates being re-paroled to special parole on April 23, 2007. (Gov't Ex. 15.) Petitioner filed the instant Petition on the grounds that the Parole Commission had no authority to sentence him to additional terms of special parole after his initial term of special parole was revoked and, tangentially, that he should have been given credit for the street time he spent on special parole after his initial term of special parole was revoked.

     B.    <u>Discussion</u>

Under a traditional parole scheme, a prisoner on parole "is deemed to be continuing to serve the original sentence imposed by the trial court and remains in legal custody until that sentence

expires even though the offender is 'at liberty' and not incarcerated behind bars." Fowler v. United States Parole Comm'n, 94 F.3d 835, 839 (3rd Cir. 1996). If the parolee violates a condition of his release on parole, he "may be returned to prison for the unexpired term of imprisonment. As such, the 'unexpired' term would be the original term of imprisonment reduced by time served and the time the defendant spent on the street before the violation." Id. (citation omitted). Traditional parole is, accordingly, "merely a conditional release from incarceration." Id. Special parole, however, was created by Congress to be served in addition to the sentence of incarceration. Id. The special parole statute, 21 U.S.C. § 841(c) (repealed), provides as follows:

> A special parole term . . . may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term provided for in this section shall be in addition to, and not in lieu of, any other parole provided for by law.

21 U.S.C. § 841(c) (repealed). Special parole differs from traditional parole in three ways: 1) "special parole follows the term of imprisonment, while regular parole entails release before the end of the term;" 2) "special parole was imposed and its length selected, by the district judge rather than by the Parole Commission;" and 3) "when special parole is revoked, its full length becomes a term of imprisonment. In other words 'street time' does not count toward completion of special parole." Id. at 840 (quoting Evans v. United States Parole Comm'n, 78 F.3d 262, 263 (7th Cir. 1996)).

Petitioner asks us to follow the holding of the United States Court of Appeals for the Third Circuit in Fowler that the Parole Commission does not have the authority to impose a new term of special parole following the revocation of a defendant's initial term of special parole. Id. at 836.

Fowler, like Farrow, had been sentenced to a new term of special parole after his initial term of special parole was revoked. Id. at 836-37. He challenged the statutory authority of the Parole Commission to impose a second or third term of special parole. The Third Circuit determined that, following revocation of special parole, Section 841(c) "provides for the re-release of a special parole violator and permits him or her to serve a sentence of imprisonment on the street." Id. at 839. The Third Circuit found that the "non-incarcerative custody" portion of the penalty which could be imposed pursuant to Section 841(c) upon revocation of special parole "is part of the sentence of imprisonment mandated upon the revocation of special parole; it is not in addition to it. Thus, it is traditional parole. Nowhere in § 841(c) has Congress vested a district judge or the Parole Commission with the authority to reimpose a special parole term." Id. at 840.

The Parole Commission contends that Farrow's reliance on Fowler is misplaced because the Supreme Court held, in Johnson v. United States, 529 U.S. 694 (2000), that, when a district court revokes a term of supervised release, it has the authority to impose a new term of supervised release to follow any incarceration. Id. at 713. The Supreme Court's holding rested, in large part, on the meaning of the term "revocation" in connection with traditional parole schemes:

> In thinking about this case, it is striking that the provisions of the former parole scheme dealing with the consequences of violating parole conditions repeatedly used the verb "revoke." And yet there seems never to have been a question that a new term of parole could follow a prison sentence imposed after revocation of an initial parole term. Thus, "revocation" of parole followed by further imprisonment was not a mere termination of a limited liberty that a defendant could experience only once per conviction, and it is fair to suppose that in the absence of any textual bar "revocation" of parole's replacement, supervised release, was meant to leave open the possibility of further supervised release, as well.

Id. at 711-12 (footnotes and citations omitted). Johnson, however, did not explicitly discuss the

meaning of "revocation" as that word is used in the former special parole statute, 18 U.S.C. § 841(c) (repealed).  Existing decisions of the Third Circuit are binding upon us "unless they are overruled by the Court of Appeals en banc or come into conflict with a subsequent decision to which it owes obedience, such as a decision by the Supreme Court." Marker v. Reilly, Civ.A.No. 02-7702, 2004 WL 846699, at *1 (E.D. Pa. Apr. 20, 2004).  Johnson did not concern the former special parole statute, 18 U.S.C. § 841(c), but the current supervised release statute, 18 U.S.C. § 3583(e)(3). Johnson, 529 U.S. at 696-97.  Thus, it does not directly conflict with Fowler.  We are, therefore, bound by Fowler and must find that the Parole Commission did not have the authority to sentence Farrow to an additional term of special parole after his first term of special parole was revoked.  See Marker, 2004 WL 846699, at *1; Bardle v. United States, Civ.A.No. 05-5279, 2006 WL 1071659, at *1 (E.D. Pa. Apr. 20, 2006) ("the Fowler decision is not squarely overruled by Johnson, there is a substantial question as to whether it can be regarded as having been overruled by implication, and, in any event, this court is obliged to follow the Fowler decision until such time as it is overruled by the Third Circuit, or undoubtedly overruled by the Supreme Court of the United States."). Consequently, we find that the Parole Commission did not have the authority to reimpose a term of special parole following the revocation of Farrow's special parole on July 22, 2002.  See Fowler, 94 F.3d at 840-41.  The 898 day of term of special parole which Farrow began serving on June 26, 2004 should, accordingly, be treated as traditional parole.

      Farrow's Petition for Writ of Habeas Corpus is, accordingly, conditionally granted.  Since it is highly likely that Farrow has already served his original sentence and his sentences for parole violations, if those sentences had been properly calculated in accordance with Fowler, we conclude that Petitioner should be released from custody within ten days of the date of this Order-

Memorandum, unless, within that time period, the Parole Commission can demonstrate that a further period of custody may be lawfully required. See Bardle, 2006 W.L. at *1.

BY THE COURT:

/s/ John R. Padova

John R. Padova, J.